Thomas P. COSTELLO and Camille
Costello, Plaintiffs/Appellants,

v.

CITY OF ELLISVILLE, et al.,
Defendants/Respondents.

No. 67984.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 30, 1996.

Edward C. Cody, Klutho, Cody, Kilo & Flynn, St. Louis, for appellant.

Peter Joseph Dunne, Rabbitt, Pitzer & Snodgrass, St. Louis, for respondent.

Kevin Paul Schnurbusch, Evans & Dixon, St. Louis, for Missouri Highway and Transportation, Defendant.

Thomas Joseph Plunkert, Leritz, Plunkert & Bruning, St. Louis, for Gary & Roger Link Construction, Inc., Respondent.

Paul Hunker, St. Louis, for Laclede Gas Company, Respondent.

GARY M. GAERTNER, Judge.

Appellants, Thomas and Camille Costello ("parents"), appeal the judgment of the Circuit Court of the County of St. Louis entered against respondent, City of Ellisville ("City"), and entered in favor of respondents, Martin Cox, Missouri Highway and Transportation Commission ("MHTC"), Gary & Roger Link Construction, Inc. ("Link"), and Laclede Gas Company, on their wrongful death claim. We affirm.

This case involves the death of James T. Costello ("decedent"), parents' son, which resulted from a collision between his car and a police car responding to an emergency. On September 4, 1992, Sergeant Martin Cox, a police officer with City, was on patrol duty as Shift Supervisor. His shift extended into the early morning hours of September 5. At approximately 12:50 a.m. on that date, Cox was performing business checks on businesses along Manchester at Clarkson/Kiefer Creek Roads. One such check was performed at the Waterway Car Wash located on Manchester east of Clarkson/Kiefer Creek. During this check, Cox noticed a car parked in a peculiar location on the car wash lot. Cox inspected the vehicle and determined it had been parked there recently. A license plate check revealed the owner was an out-of-county resident. Cox checked all of the doors of the car wash and the neighboring business, and finding them "secure," departed on his rounds.

Approximately twenty minutes later, Cox heard a radio transmission from another officer that he had found an "insecure" door at the Waterway Car Wash. Cox, believing a possible burglary or other crime was in progress and worrying about the officer's safety, began to respond to the call for backup and informed the dispatcher he was en route. Cox activated his lights as he pulled out onto Manchester Road heading east. He soon followed with his siren which he set in the "wail" position.[1]

The posted speed limit for that area of Manchester is forty miles per hour. Cox reached this speed and increased it to approximately fifty miles an hour. He testified he observed a green light for his direction of traffic at the intersection of Manchester and Clarkson/Kiefer Creek Roads when he was approximately 450 feet west of it. Cox further stated he had a clear view of the intersection and did not see any moving traffic at the intersection.

Cox testified he did not see decedent's vehicle, which was northbound on Clarkson/Kiefer Creek Roads, until it had begun entering the intersection, when Cox was approximately 150 feet away. Cox immediately braked and steered to his left in an attempt to swerve around the car. This maneuver failed, however, and Cox's vehicle hit decedent's car at its front driver side, resulting in decedent's death.

---

1. While the testimony of one witness revealed he did not recall hearing a siren, Cox and at least one other witness stated unequivocally that the siren was operating. Furthermore, this fact was assumed true in the jury instructions and conceded in parents' appellate brief.

Parents filed a wrongful death claim naming Cox, individually, and City, under the theory of respondeat superior, as defendants.[2] Parents also filed counts against MHTC, Link, and Laclede Gas, alleging a pile of debris the three defendants negligently deposited at the southwest corner of the intersection off the roadway caused or contributed to cause decedent's death.

Before trial, the court granted defendants MHTC's, Link's, and Laclede Gas' motions to dismiss for failure to state a cause of action. The trial proceeded against defendants Cox and City, at the conclusion of which the jury returned a verdict in favor of parents in the amount of $150,000. The jury assessed seventy percent of fault against defendant Cox and thirty percent of fault against decedent. The court reduced the amount of the verdict to $105,000 in accordance with the jury's allocation of fault. The court also granted defendant Cox's motion for judgment notwithstanding the verdict, ruling he was entitled to official immunity. City filed a motion to amend the judgment in order to comport with the provisions of RSMo 537.610.1 (1994), which the court granted.[3] The trial court then entered its judgment in favor of parents in the amount of $100,000, which City subsequently satisfied. Parents filed this appeal.

Parents assert two points on appeal. First, they contend the trial court erred in granting Cox's motion for j.n.o.v. on the grounds he was shielded from liability by official immunity. Secondly, parents argue the trial court erred in granting MHTC's, Link's and Laclede Gas' motions to dismiss on the grounds they owed no duty to decedent. We address each issue in turn.

■ Parents argue the evidence supported the jury's finding that Cox was negligent in the operation of his vehicle and that Cox was not entitled to official immunity as a matter of law. Although we agree the evidence could support a finding of negligence on behalf of Cox, we find any negligence committed was integrally bound to the officer's use of discretion in determining how to respond to an emergency, thus fitting squarely within the doctrine of official immunity and precluding liability on Cox's part.

■ The doctrine of official immunity holds an officer is not civilly liable for negligence arising out of the performance of discretionary duties. *Green v. Denison,* 738 S.W.2d 861, 865 (Mo. banc 1987). A discretionary act requires " 'the exercise of reason in the adaption of means to an end and *discretion in determining how or whether an act should be done or course pursued.' "* *Kanagawa v. State by and through Freeman,* 685 S.W.2d 831, 836 (Mo. banc 1985) (citation omitted) (emphasis ours). "Discretion and judgment are synonymous." *Green,* 738 S.W.2d at 865. The term "discretion" should not be defined narrowly as such an interpretation would frustrate the purpose of official immunity. *Bachmann v. Welby,* 860 S.W.2d 31, 33 (Mo.App.E.D.1993). The doctrine was established to protect officers from second-guessing. *Green,* 738 S.W.2d at 866. "This is so even though hindsight may demonstrate errors in judgment which might be branded as negligent by qualified evaluators." *Id.*

■ Parents contend RSMo § 304.022.4 (1994) and a special order effected by City's Chief of Police precluded Cox's claim of official immunity as the provisions removed the component of discretion on which the doctrine turns. We disagree. Section 304.022.4(2) states

[t]he driver of an emergency vehicle may:

\* \* \* \* \* \*

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c) Exceed the prima facie speed limit so long as he does not endanger life or property;

\* \* \* \* \* \*

An emergency vehicle can operate in this manner so long as its flashing lights and siren are operating at the time. RSMo § 304.022.4(3); *McGuckin v. City of St. Louis,* 910 S.W.2d 842, 845 (Mo.App.E.D.

---

**2.** City's sovereign immunity was waived pursuant to RSMo § 537.600.1(1) (1994).

**3.** The statute limits recovery against the State or any political subdivision to $100,000 for any one person in a single accident.

1995). Parents mistakenly argue the language of the statute not only mandates an officer utilize his or her lights and siren, but that it also requires an officer operating an emergency vehicle to slow down when proceeding through an intersection and not to exceed the speed limit when it would endanger life or property. However, these provisions merely suggest how the driver of an emergency vehicle should proceed *depending on the particular circumstances surrounding him or her at the time.* An officer's judgment is utilized in determining at what speed he or she can maneuver through an intersection against a signal or at what speed in excess of the speed limit he or she can safely travel under the existing traffic conditions. *See McGuckin,* 910 S.W.2d at 845 (officer can exercise his judgment in responding to the situation as circumstances may warrant after complying with statute). It is in this exercise of discretion that an officer is shielded from liability by official immunity.

Nor did the special order related to alarm soundings remove Cox's ability to exercise his discretion; the order did not dictate Cox's actions under these particular facts. First, the call Cox was responding to was not an "alarm sounding," but rather was a call for back-up to which Cox, as the shift supervisor, was obligated to respond. Second, Cox was aware of other circumstances which significantly altered the nature of a routine call for backup, which included (1) Cox had found all of the doors at the car wash locked only twenty minutes earlier, (2) Cox had found a car registered to an out-of-county resident recently left at the car wash lot, and (3) an officer was at the scene alone. At the time, these factors led Cox to believe a burglary was in progress and an officer's safety was at stake, which circumstances constituted an emergency calling for an immediate response. While hindsight shows this was not the actual case, we cannot second-guess the officer's interpretation of the situation as it then appeared to him or his response to that situation. *See Green,* 738 S.W.2d at 866. Thus, the trial court correctly determined Cox was entitled to official immunity and granted his j.n.o.v.

For their second point on appeal, parents assert the trial court erred in dismissing defendants MHTC, Link, and Laclede Gas from the lawsuit. The defendants counter with a number of arguments supporting the court's action. We believe the first of these is dispositive of the issue.

■ MHTC, Link, and Laclede Gas assert that, because parents' judgment was fully satisfied by City, parents have forfeited their right to proceed against the three defendants as all defendants originally named in the action were joint tortfeasors. It has long been the rule in Missouri that, where judgment for a wrong is rendered against one who is a joint tortfeasor, and the judgment is satisfied, the plaintiff cannot recover another satisfaction for the same wrong. *Payne v. Bertman,* 27 S.W.2d 28, 29 (Mo.App.K.C. 1930). In other words, "all who may be liable are discharged." *Id.*

■ The term joint tortfeasor includes a single, indivisible harm caused by independent, separate, but concurring wrongful acts of two or more persons. *Brickner v. Normandy Osteopathic Hosp., Inc.,* 687 S.W.2d 910, 912 (Mo.App.E.D. banc 1985). There is no dispute but that parents sued these defendants as joint tortfeasors, along with Cox and City, alleging their acts of negligence in placing debris on the corner of the intersection caused or contributed to their son's wrongful death. Thus, once they obtained a judgment against one joint tortfeasor for their injury, here the City, which judgment was fully satisfied, parents had no recourse against any other defendant.

Further, parents do not argue the judgment entered below was inadequate, as to entitle them to a new trial on the damages issue. Rather, they urge this court to remand the proceedings for a new trial as to the liability of and damages owed by the three dismissed defendants. This we cannot do. To grant parents their request would be to allow them to recover twice for a single harm, in contravention of the law. *See Payne,* 27 S.W.2d at 29. Thus, as we find this issue to be dispositive, we need not address the other arguments posited by the parties.

**138**

Based on the foregoing, the judgment of the trial court is affirmed.

GERALD M. SMITH, P.J., and RHODES RUSSELL, J., concur.