Dominic PACE, Plaintiff/Respondent,

v.

PACIFIC FIRE PROTECTION DISTRICT and Eric Shoemaker, Defendants/Appellants.

No. 70858.

Missouri Court of Appeals, Eastern District, Division Two.

April 29, 1997.

8

Rabbitt, Pitzer & Snodgrass, P.C., Steven J. Hughes, St. Louis, for Appellants.

Roy A Walther, III, Law Office of Michael A. Gross, Michael A. Gross, Cynthia A. Sciuto, St. Louis, for Respondent.

PUDLOWSKI, Judge.

Pacific Fire Protection District and Eric Shoemaker (defendants) appeal from an order denying their motion for judgment notwithstanding the verdict. We affirm.

On March 20, 1995, the Pacific Fire Protection District received a 911 call reporting a trailer fire on Interstate 44 and were dispatched to the scene. Also dispatched to the scene of the fire was the Eureka Fire Protection District. Both trucks arrived at or near the same time. Upon arrival, the two man crew of the Eureka Fire District, discovering that the fire was in its district began to attend to the fire, asked for the assistance of one man from the Pacific crew, and informed the rest of the Pacific crew that neither they nor their truck would be needed. Eric Shoemaker, driver of the fire truck, parked the 7 foot 10 inch wide truck on the 7 foot 2 inch wide shoulder and waited for further instructions. During this time, Lt. Scott Walka of the Pacific fire crew was assisting the Eureka fire crew with the trailer fire.

Approximately 10 minutes later, Dominic Pace appeared in the left lane following a Blazer pick up truck, which in turn was following an 18–wheel tractor trailer. The vehicles were traveling at approximately 65 miles per hour, when the tractor trailer came to almost a dead stop and swerved into the next lane. The Blazer then veered into the next lane after seeing the fire truck and the driver then watched in his rear view mirror as plaintiff's truck collided with the fire truck. Plaintiff has no memory of the accident.

The driver of the Blazer testified that the emergency lights of the truck were not on. The Eureka Fire District and the Pacific Fire District asserted that the emergency lights were operating. The jury returned its verdict awarding $100,000 in total damages to plaintiff and assessed plaintiff's comparative fault at 65%. The stipulated property damage to the truck was $24,719.55. The court then entered its judgment in accordance with the jury verdict in the amount of $18,932.29 [1] to be recovered by plaintiff. Thereafter, defendants filed their motion for judgment notwithstanding the verdict which was denied by the trial court and defendants appeal thereon.

On appeal, defendants assert that they are shielded from liability by the public duty doctrine, the official immunity doctrine, and by statute and, therefore, the trial court erred in denying defendants' motion for judgment notwithstanding the verdict at the close of trial.

 Upon review of the denial of a judgment notwithstanding the verdict motion, we view all evidence in the light most favorable to the prevailing party, and disre-

---

1. The judgment amount was derived by deducting the plaintiff's percentage of fault attributable to the damage of the fire truck from the $35,000 verdict. The Pacific Fire Protection District filed a counterclaim for the damages to the fire truck.

gard all contrary evidence to determine whether a submissible case was made. *Dierker Associates, D.C., P.C. v. Gillis*, 859 S.W.2d 737, 743 (Mo.App. E.D.1993). The jury is the sole judge of the weight of the evidence to be given to witnesses and may choose to believe or disbelieve any part of that testimony, *Gasser v. John Knox Village*, 761 S.W.2d 728 (Mo.App.1988), and, where reasonable minds can differ on the question before the jury, the court may not disturb the jury's verdict. *Feely v. City of St. Louis*, 898 S.W.2d 708 (Mo.App. E.D.1995). In this case the jury had the authority to decide between the evidence which defendants presented and that which plaintiff presented. If reasonable minds could differ on the evidence, then this court may not substitute its judgment on the merits for that of the jury.

■ The general rule is that public officials must operate their motor vehicles in the course of their duties in accordance with all traffic rules and regulations, and to exercise the highest degree of care on the roads. *McGuckin v. City of St. Louis*, 910 S.W.2d 842, 845 (Mo.App. E.D.1995); *Brown v. Tate*, 888 S.W.2d 413 (Mo.App. W.D.1994). Section 304.022 RSMo 1994 provides an exception to the general rule for emergency vehicles in emergency situations. Section 304.022.4 provides in pertinent part:

(2) The driver of an emergency vehicle may:

a) Park or stand irrespective of the provisions of Sections 304.014, 304.026. . . .

(3) The exemptions herein granted to an emergency vehicle shall apply only when . . . the vehicle is equipped with at least one lighted lamp displaying a red light or blue light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle.

■ Until the fire crew "was in compliance with the statute, they were bound by the same rules of the road as other drivers, and are afforded no special immunity for negligent acts or omissions committed by them." *McGuckin* 910 S.W.2d at 845. The *McGuckin* court further stated that the "statute places limits on an officer's ability to operate his vehicle in whatever manner he deems necessary." He must comply with the statute before he can disregard the traffic rules. *Id; See also Costello v. City of Ellisville*, 921 S.W.2d 134 (Mo.App. E.D.1996). *McGuckin* involved a collision between a police officer en route to an emergency and another driver. The jury rejected the evidence that the officer was in compliance with the statute and presumably believed the driver's evidence that the police officers' siren was not activated. The jury award was upheld and the official immunity doctrine was not extended. *Id.*

■ This case directly follows the rationale of *McGuckin*. At trial, defendants presented evidence that they had complied with the statute. They showed that the light was visible under normal atmospheric conditions from a distance of 700 feet. This evidence was uncontested. They submitted testimony of members of both the Eureka and Pacific fire crews stating that the emergency lights were on. This testimony was contradicted by the driver of the Blazer truck, a disinterested party, who claims that the emergency lights were not on. Defendants further asserted that they were involved in an emergency situation by showing that part of their crew was involved in fighting a trailer fire. Plaintiff claims that the truck was not involved in an emergency situation in that it was not needed and further that it was just sitting there in a manner hazardous to other drivers. The jury was made aware of the requirements of the statute, returned a verdict for the plaintiff in the amount of $100,000 and assessed plaintiff's fault to be 65%. In doing so, the jury presumably determined that the trucks lights were not on, or alternatively, that no emergency situation existed. This was a fact determination for the jury. *See Anderson v. Jones*, 902 S.W.2d 889 (Mo. App. E.D.1995).

■ Defendants assert, as a matter of law, that they are shielded from liability by the public duty doctrine, and the official immunity doctrine. The public duty doctrine shields public officers, and the governmental bodies that employ them from liability for injuries or damages resulting from the officers' breach of a duty owed to the general public as opposed to particular individuals.

Official immunity, on the other hand, protects public officials acting within the scope of their authority from liability for injuries arising from their discretionary acts or omissions. *Heins Implement v. Hwy. & Transp. Com'n.*, 859 S.W.2d 681 (Mo. banc 1993); *McGuckin,* 910 S.W.2d at 844. The policy behind these doctrines is the promotion of "effective administration of public affairs by removing the threat of personal liability from those officials who must exercise their best judgment in conducting the public's business." *Heins Implement,* 859 S.W.2d at 695. The doctrine was established to protect officials from second guessing. *Costello,* 921 S.W.2d at 137. We recognize the importance of these concerns to public officials but find, as a matter of law, that a statute must first be complied with before the protection of the doctrines may be applied.

Defendants cite many cases supporting their assertion, as a matter of law, that they should be shielded from liability under the public duty doctrine, (*See Heins Implement,* 859 S.W.2d at 694; *Clay v. Scott,* 883 S.W.2d 573, 576 (Mo.App. E.D.1994); and *Beaver v. Gosney,* 825 S.W.2d 870 (Mo.App.1992)), and under the official immunity doctrine. (*See Heins Implement,* 859 S.W.2d at 695; *Green v. Denison,* 738 S.W.2d 861, 864 (Mo. banc 1987); and *Costello,* 921 S.W.2d at 134). Defendants' cases fall into two categories: (1) cases which do not involve statutes, or where no statute was discussed which mandated certain actions, and (2) cases where the mandatory language of an existing statute was complied with. Defendants' reliance on these cases is misplaced. "Once an officer complies with the mandates of the statute, he brings himself under the protective umbrella of the statute and *can then* exercise his judgment in responding to the situation as the circumstances may warrant." *McGuckin,* 910 S.W.2d at 845. (emphasis added). First, there must be compliance with the statute, then the public duty and official immunity doctrines may be applied.

This case involves a mandatory statutory provision, which according to the jury, was not complied with. This must be done before the public duty and the official immunity doctrines could be relied upon.

We find that the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict. Judgment affirmed.

CRANE, P.J., and GERALD M. SMITH, J., concur.