KURT S. ODENWALD, Judge *14 Introduction
Annie Rayman ("Rayman") appeals from the trial court's grant of summary judgment in favor of Abbott Ambulance, Inc. ("Abbott") on her negligence claim. Rayman sued Abbott for damages that resulted from an automobile collision between Rayman and a third party. The trial court granted Abbott's motion for summary judgment, finding that Abbott did not owe Rayman a duty of care and that Abbott was not the proximate cause of Rayman's injuries. In her sole point on appeal, Rayman posits that the trial court erred entering summary judgment for Abbott because there exist genuine issues of material facts regarding whether Abbott owed her a duty of care, if Abbott was the proximate cause of her injuries, and whether the third party properly yielded the right of way to Abbott's ambulance. Because Rayman cannot establish that Abbott was the proximate cause of her injuries, the trial court did not err in granting summary judgment. Accordingly, we affirm.
Factual and Procedural History
Darla Boester ("Boester") and Cliff Herrin, employees of Abbott, were driving an ambulance eastbound on Interstate 44 in the City of St. Louis. While driving, the ambulance operators received a call to transport a patient from the Center for Advanced Medicine to Barnes-Jewish Hospital. Dispatch coded the call as an emergency and indicated that the patient was experiencing uncontrolled bleeding. In response to the call, the ambulance operators activated the ambulance's emergency sirens and lights and exited Interstate 44 at South Kingshighway Boulevard.
Elizabeth Downey ("Downey"), driving a van, was stopping at a red light that controlled the Interstate 44 exit ramp at South Kingshighway Boulevard. Downey noticed the activated emergency sirens from the ambulance approaching behind her. Downey explained that she heard a continuous siren described as "a wail" and then saw the emergency lights and heard a horn-like sound described as "a yelp." As the ambulance gained on Downey's position, she maneuvered her van into the southbound lane of South Kingshighway Boulevard to allow the emergency vehicle to proceed. Downey maintained that the ambulance's appearance forced her to move her van into the intersection.
Meanwhile, Lisa Gans ("Gans") was driving her vehicle in the southbound lane of South Kingshighway Boulevard. Gans also heard the emergency sirens. In response, Gans stopped her vehicle. After becoming stationary, Gans saw the ambulance, with its lights activated, positioned on the exit ramp behind Downey's van. Gans claimed that she could clearly hear and see the ambulance's sirens and lights from her position. Gans witnessed Downey's van enter the intersection. Gans then observed a vehicle, driven by Rayman and also traveling southbound on South Kingshighway Boulevard, approach, reach, and travel beyond Gan's location. Rayman's vehicle proceeded past Gans's stopped vehicle and entered directly into the intersection, colliding with Downey's van. According to Rayman, she had a green light when she reached the intersection. Rayman did not remember or know whether the ambulance operators had activated the ambulance's sirens or lights before the collision.[1] No vehicle made contact with the ambulance.
*15 The ambulance continued to the Center for Advanced Medicine to pick up the patient and transport her to Barnes-Jewish Hospital. After observing the patient, Boester believed that the patient's condition was not life threatening. In transporting the patient to Barnes-Jewish Hospital, the ambulance operators did not activate the ambulance's emergency sirens or lights. Although dispatch initially informed the ambulance operators that it was an emergency, the transport was billed "as a non-emergency trip."
Rayman sued Abbott, claiming that its negligence caused her to suffer permanent injuries in the collision.[2] Specifically, Rayman alleged that the ambulance approached the intersection in a negligent manner and with excessive speed, causing Rayman's vehicle to collide with Downey's van. Abbott moved for summary judgment, arguing that it did not owe Rayman any duty under the circumstances and that it was not the proximate cause of her injuries. Abbott contended that Rayman failed to comply with Section 304.022.1,[3] which required motorists to yield the right of way to an emergency vehicle. Abbott posited that Rayman's failure to comply with the law was not foreseeable and constituted the independent, intervening cause of her injuries.
The trial court entered judgment in favor Abbott. The trial court found that the only evidence of Abbott forcing Downey's van into the intersection was "evidence that the ambulance engaged its siren, lights and horn and that ... Downey responded to these signals by yielding the right of way and moving to the right as required by Section 304.022.1 RSMo." The trial court determined that Abbott had established, on the undisputed material facts, that Rayman would not be able to show the existence of a duty or that Abbott's conduct proximately caused her injuries. This appeal follows.
Standard of Review
We review a grant of summary judgment de novo. Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co., 464 S.W.3d 177, 183 (Mo. banc 2015) ; ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). In reviewing the trial court's summary-judgment ruling, we apply "the same criteria as the trial court in determining whether summary judgment was proper." Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC, 422 S.W.3d 312, 319 (Mo. banc 2014) (quoting Goerlitz v. City of Maryville, 333 S.W.3d 450, 452 (Mo. banc 2011) ). "Summary judgment is appropriate when 'there is no genuine dispute about material facts and, under the undisputed facts, the moving party is entitled to judgment as a matter of *16 law.' " Bishop & Assocs., LLC v. Ameren Corp., 520 S.W.3d 463, 468 (Mo. banc 2017) (quoting Parr v. Breeden, 489 S.W.3d 774, 778 (Mo. banc 2016) ). A defendant shows a right to summary judgment when he or she establishes:
(1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.
ITT Commercial Fin. Corp., 854 S.W.2d at 381. Each of the three espoused methods individually demonstrates the right to judgment as a matter of law. Cent. Trust & Inv. Co., 422 S.W.3d at 320 (quoting Goerlitz, 333 S.W.3d at 453 ).
"A genuine dispute exists when 'the issue, or dispute, [is] a real and substantial one-one consisting not merely of conjecture, theory and possibilities.' " Brentwood Glass Co. v. Pal's Glass Serv., Inc., 499 S.W.3d 296, 300 (Mo. banc 2016) (quoting ITT Commercial Fin. Corp., 854 S.W.2d at 378 ). "A material fact in the context of summary judgment is one from which the right to judgment flows." Cent. Trust & Inv. Co., 422 S.W.3d at 319 (quoting Goerlitz, 333 S.W.3d at 453 ). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." DeCormier v. Harley-Davidson Motor Co. Grp., 446 S.W.3d 668, 671 (Mo. banc 2014) (quoting ITT Commercial Fin. Corp., 854 S.W.2d at 376 ). Finally, we review the record in the light most favorable to the party against whom judgment was entered. ITT Commercial Fin. Corp., 854 S.W.2d at 376. But, the trial court's grant of summary judgment "may be affirmed on any appropriate theory supported by the record." Arbors at Sugar Creek Homeowners Ass'n, 464 S.W.3d at 183.
Point on Appeal
Rayman presents one point on appeal. In her point, Rayman argues that the trial court erred in granting summary judgment because there exist genuine issues of material fact regarding whether Abbott owed her a duty of care, if Abbott was the proximate cause of her injuries, and whether Downey complied with Section 304.022.1 by driving into the intersection.
Discussion
In her sole point on appeal, Rayman argues that genuine factual disputes precluded the trial court from entering summary judgment. Specifically, Rayman divides her point on appeal into three substantive factual disputes: Part One regards the duty of care Abbott owed to Rayman; Part Two relates to whether Abbott was the proximate cause of Rayman's injuries; and Part Three pertains to whether Downey complied with Section 304.022.1. Before reviewing the merits of Rayman's appeal, we first must address the deficiencies contained within Rayman's appellate brief.
I. Abbott's Motion to Strike Rayman's Appellate Brief
Before the submission of the case, Abbott moved to strike Rayman's appellate brief, asserting that the brief contained references to materials that were never filed with the trial court and thus outside the summary-judgment record. Rayman's appellate brief contains numerous references to, and arguments based on, a supplemental legal file containing the full *17 depositions of Downey and Boester. However, the full depositions of Boester and Downey were not submitted to the trial court in their entirety and were not a part of the summary-judgment record . Because the materials referenced in the supplemental legal file were never a part of the summary-judgment record, we cannot consider them on appeal.[4] See Millard v. Corrado, 14 S.W.3d 42, 46 (Mo. App. E.D. 1999). We struck the supplemental legal file, and we took Abbott's motion to strike Rayman's appellate brief with the case.
Rayman concedes that we should disregard, in her appellate brief, all references to, and arguments based on, the stricken supplemental legal file. Accordingly, we grant Abbott's motion in part and strike from Rayman's brief any arguments or factual assertions based on the supplemental legal file. Rayman nevertheless maintains that her briefing deficiencies do not require us to strike her brief in its entirety. Rayman claims that, even if we ignore the improper aspects of her appellate brief, we can still discern and resolve the issues raised.
Generally, we prefer to decide appeals on the merits if possible. Brown v. Hamid, 856 S.W.2d 51, 53 (Mo. banc 1993). However, an appeal will be dismissed for improper briefing when the infraction frustrates or impedes our ability to review the case. White v. Bowman, 304 S.W.3d 141, 146 (Mo. App. S.D. 2009). Briefing infractions will impede our ability to review a case when the brief "fails to give notice to the other parties and to the appellate court of the basis for the claimed error." Bolz v. Hatfield, 41 S.W.3d 566, 571 (Mo. App. S.D. 2001).
Upon removing all references to the stricken supplemental legal file and to any materials outside the summary-judgment record, we are left with a rather incomplete point on appeal. Indeed, many arguments contained within Parts One and Three become undeveloped and unsupported by the summary-judgment record.[5] Without further elaboration or development, we are compelled to speculate as to Rayman's possible points and substitute our own developed arguments on appeal. This we cannot do, as it would require us to act as Rayman's advocate. See Robert T. McLean Irrevocable Trust v. Ponder, 418 S.W.3d 482, 500 (Mo. App. S.D. 2013) (explaining that an appellate court cannot "piece together" a party's argument because it would improperly cast the court in the role of the party's advocate). The function of an appellate court is not to serve as advocate for the parties on appeal, and the court must carefully safeguard its role as a neutral adjudicator. See Mansfield v. Horner, 443 S.W.3d 627, 652 (Mo. App. W.D. 2014) (emphasizing that an appellate court must refrain from developing points that the party has not asserted). Addressing arguments that a party did not sufficiently develop, especially after the party had a full opportunity to brief them on appeal, would manipulate the adversarial process *18 and interfere with the court's neutrality. Kline v. City of Kan. City, 334 S.W.3d 632, 648 (Mo. App. W.D. 2011) ; see also First State Bank of St. Charles v. Am. Family Mut. Ins. Co., 277 S.W.3d 749, 753 (Mo. App. E.D. 2008) (stating that "[i]t is not within [our] province to decide arguments that are not adequately developed."). Due to fairness and impartiality considerations, we will not consider any arguments asserted by Rayman in Part Three and many of her arguments in Part One.[6]
However, we need not resort to the drastic remedy of striking Rayman's appellate brief in its entirety. Part Two of Rayman's point on appeal challenges the trial court's finding that Abbott was not the proximate cause of Rayman's injuries. Part Two does not reference, or rely upon, the stricken supplemental legal file or materials outside the summary-judgment record. Accordingly, we will address Rayman's contention regarding proximate causation on its merits.
II. No Proximate Causation
In any action for negligence, the plaintiff must establish, inter alia , that the defendant's breach of his or her duty to the plaintiff was the proximate cause of the plaintiff's injuries. See Parr v. Breeden, 489 S.W.3d 774, 778 (Mo. banc 2016) (quoting Martin v. City of Washington, 848 S.W.2d 487, 493 (Mo. banc 1993) ). Consequently, establishing proximate cause is an essential element of negligence, and if the plaintiff cannot establish that defendant's negligent conduct was the proximate cause of his or her injuries, his or her negligence claim must fail. See Heffernan v. Reinhold, 73 S.W.3d 659, 664 (Mo. App. E.D. 2002). "Whether proximate cause exists is usually a jury question; however, a court properly interposes its judgment in this determination when the evidence reveals the existence of an intervening cause that eclipses the role the defendant's conduct played in the plaintiff's injury." Id. at 665 ; see also Meyer v. City of Walnut Grove, 505 S.W.3d 331, 336 (Mo. App. S.D. 2016) (explaining that, where the evidence connecting the injury to the defendant's negligence "amounts to mere conjecture and speculation," the question of proximate cause "becomes one of law").
"The general test for proximate cause is whether the claimed injury is the natural and probable consequence of the defendant's alleged negligence." Nail v. Husch Blackwell Sanders, LLP, 436 S.W.3d 556, 563 (Mo. banc 2014). Proximate cause thus is determined by "looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct." Wilmes v. Consumers Oil Co. of Maryville, 473 S.W.3d 705, 722 (Mo. App. W.D. 2015) (quoting Robinson v. Mo. State Highway & Transp. Comm'n, 24 S.W.3d 67, 78 (Mo. App. W.D. 2000) ). "Proximate cause cannot be based on pure speculation and conjecture." Dilley v. Valentine, 401 S.W.3d 544, 548 (Mo. App. W.D. 2013) (quoting Stanley v. City of Independence, 995 S.W.2d 485, 488 (Mo. banc 1999) ). We must decide each case on its own facts. Nail, 436 S.W.3d at 563.
In cases involving multiple negligent actors, a question arises as to whether the initial act of negligence was a proximate cause of the injury, or whether an efficient, intervening cause "eclipsed the role of the original actor's negligence in *19 the plaintiff's injury." Esmond v. Bituminous Cas. Corp., 23 S.W.3d 748, 753 (Mo. App. W.D. 2000) ; see also Boggs v. Lay, 164 S.W.3d 4, 18 (Mo. App. E.D. 2005). "An efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury, but it may not consist of merely an act of concurring or contributing negligence." Hargis v. Lankford, 372 S.W.3d 82, 87 (Mo. App. S.D. 2012) (quoting Buck v. Union Elec. Co., 887 S.W.2d 430, 434 (Mo. App. E.D. 1994) ). The issue is whether the intervening act so supersedes the defendant's earlier conduct as to excuse its responsibility thereof. Buck, 887 S.W.2d at 434.
Here, Rayman argues that her conduct was not an intervening and independent act that functioned as the proximate cause of her injuries. Rayman cites to Oberkramer v. City of Ellisville, 650 S.W.2d 286 (Mo. App. E.D. 1983) in support of her argument. In Oberkramer, the plaintiffs brought a wrongful death action against the defendants, including a police officer and the police department, after a vehicle being pursued in a chase by police struck the decedent during the pursuit. Id. at 289. The police car and the pursued vehicle traveled at speeds in excess of 100 miles per hour. Id. As the pursued vehicle approached a police roadblock, it veered out of control, crossed the median of the road, and struck the decedent. Id. The plaintiffs alleged that the police officer's negligence, in instituting and continuing a police chase at excessive speeds, caused the decedent's death. Id. We found that the plaintiffs' petition did not allege facts demonstrating that the police officer's acts raised the risk of harm beyond that sanctioned by the legislature in Section 304.022. Id. at 292-93. We remanded the case to permit the plaintiffs to replead their cause of action in accordance with the opinion.[7] Id. at 293-94.
In remanding the case to allow an amended pleading, we offered that, if properly pled, the plaintiffs' claim would not be barred by lack of proximate causation. Id. at 298. We opined that the operation of the pursued vehicle was not, as a matter of law, "an intervening cause which cut off the liability of the pursuing police officers." Id. at 299. Finding that initially it was foreseeable to the police officer that the pursued traffic violator might stop, we noted that, as the pursuit continued, it became apparent that the pursued vehicle would persist in fleeing. Id. As the pursuit developed, the intervention of the pursued vehicle brought about the same kind of harm that otherwise could have resulted from the police officers' negligence, and "it was equally foreseeable that an accident involving either would occur." Id.
We find Rayman's reliance on Oberkramer unavailing.[8] In a police pursuit, the *20 actions of the pursued and the pursuer are more closely connected. In such cases, there exists a clearer link between the police officer's actions and the pursued suspect's corresponding reactions. Further, as a vehicular pursuit continues, the risk of causing an accident or collision increases. See id. Unlike a high-speed pursuit, the approach of an ambulance, with its lights and sirens activated, does not potentially enhance the possible danger by increasing the intensity and nature of the acts taken by the pursued vehicle's operator in his or her attempt to escape. Although both situations involve emergency vehicles, an ambulance responding to a call does not have the same effect on "pursued" vehicles as a police officer conducting a vehicular chase.
Further, contrary to facts of Oberkramer , here the purported intervening cause was not the driver of a pursued vehicle reacting to a following police officer. Rather the intervening cause of the plaintiff's injuries was her own actions; Rayman proceeded into an intersection, despite the presence of an ambulance nearby, in violation of Section 304.022.1. Section 304.022.1 requires that, upon the immediate approach of an emergency vehicle exhibiting the statutorily required sirens or lights, "the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as far as possible to the right of, the traveled portion of the highway and thereupon stop and remain in such position until such emergency vehicle has passed[.]" Section 304.022.1 applies to all operators of motor vehicles when confronting an emergency vehicle that complies with the statutory requirements. See Politte v. Miller, 301 S.W.2d 839, 842-43 (Mo. App. St. Louis 1957) (explaining that "every operator of a private motor vehicle must anticipate the possibility of emergency vehicles commandeering street intersections and, in the exercise of the highest degree of care, must be on the lookout or on the alert for them notwithstanding the ordinary traffic flow at a particular intersection is regulated by electric signals and the green light is in the operator's favor."); cf. Reid v. Timme, 611 S.W.2d 363, 367 (Mo. App. E.D. 1980) (reasoning that, under another right-of-way statute, the requirement to yield the right of way is not obviated by the defendant's negligent approach).
Accordingly, as Abbott's ambulance arrived at the intersection with lights and sirens engaged, it had the right of way, and all approaching vehicles were required to yield and permit it to proceed. See Section 304.022.1. The operators of Abbott's ambulance had the right to assume that the drivers of all vehicles, including Rayman, would comply with the statute. And, unlike a police chase, Abbott had no reason to suspect that the surrounding vehicle operators would act without regard to the statute or their own safety. See Schlegel v. Knoll, 427 S.W.2d 480, 484 (Mo. 1968) (stating that one is entitled to assume, *21 and act upon the assumption, that others will exercise due care for their own safety and well-being, in the absence of notice to the contrary); Heffernan, 73 S.W.3d at 665 ; Wise v. Pottorff, 987 S.W.2d 407, 410 (Mo. App. W.D. 1999) (stating that "Missouri law does not require motorists ... to anticipate negligence on the part of a fellow motorists unless and until there is apparent danger of a collision.").
The Abbott ambulance approached the intersection with its lights and sirens engaged, warning nearby vehicle operators to take caution and yield the right of way. To permit the ambulance to continue, Downey maneuvered her van into the intersection. Gans, a similarly situated driver to Rayman, stopped her vehicle and waited for the ambulance to pass through the intersection. The ambulance did not strike any vehicle, or swerve into the path of any vehicle. Nor was any vehicle forced to swerve or diverge from its path to avoid striking the ambulance. Unlike Gans, Rayman, contrary to the rules of the road and her own safety, entered the intersection, colliding with Downey's van. We will not speculate as to what actions, if any, Abbott could have taken here to prevent Rayman's injury, how Abbott could have anticipated Rayman's failure to abide by the rules of the road, or how the manner in which Abbott operated its ambulance could have altered the subsequent collision. The intervening cause of the collision was Rayman's own conduct-conduct that both was unrelated to the precise manner in which Abbott approached the intersection and amounted to more than contributory negligence. Consequently, Rayman's injuries were not the natural and probable consequence of Abbott's operation of its ambulance. On these facts, we cannot say that the proximate cause of Rayman's injuries was the purported negligent manner in which the ambulance approached the intersection.[9]
III. No Factual Dispute Preventing Summary Judgment
Rayman further submits that an additional genuine dispute of fact exists to preclude the entry of summary judgment in favor of Abbott. Rayman asserts that Abbott's ambulance was not entitled to the right of way under Section 304.022.1 because the ambulance was not an emergency vehicle exhibiting the statutorily required sirens and lights. Specifically, Rayman attempts to create a factual issue regarding whether the Abbott ambulance was responding to an emergency and whether its sirens and lights were engaged before it approached the intersection. We find no disputed factual issues in the record precluding summary judgment.
Regarding her claim that Abbott was not operating an emergency vehicle during the collision, Rayman emphasizes the following undisputed facts: the ambulance operators did not use the ambulance's emergency sirens and lights when it transported the patient from the Medical Center to Barnes-Jewish Hospital; the ambulance trip was billed as a non-emergency; and Boester believed that, after a physical inspection, the patient was not in life-threatening danger.
By its plain language, Section 304.022.1 entitles an approaching emergency vehicle displaying the proper statutory sirens and lights to the right of way. A privately owned vehicle operating as an *22 ambulance may constitute an emergency vehicle under Section 304.022. Adams v. Manchester Ins. & Indem. Co., 385 S.W.2d 359, 363 (Mo. App. St. Louis 1964). Further, if the emergency vehicle is responding to an emergency call or is in pursuit of a law violator, the responder is authorized to sound the vehicle's emergency sirens or display its flashing lights. See Section 304.022.5. In reviewing whether the ambulance in question was used to answer an emergency call, we examine (1) the nature of the call that was received; (2) the situation as presented to the mind of the driver at the time he received the call; and (3) the manner in which he reacted and operated the ambulance in response to such a call. Adams, 385 S.W.2d at 363-64. Importantly, whether an emergency existed in fact is not pertinent to our review. Id. at 364.
Critically, Rayman emphasizes undisputed facts that occurred after the ambulance operators initiated the ambulance's sirens and lights. In so doing, Rayman ignores the temporal circumstances presented to the emergency-responders at the time of the alleged negligence. Subsequent developments that the responder cannot reasonably anticipate do not alter the reasonableness of his or her initial determination as to the existence of an emergency. Cf. Creighton v. Conway, 937 S.W.2d 247, 250 (Mo. App. E.D. 1996) (finding that, as a matter of law, a police officer was responding to an emergency when he received a "priority one" call to the accident scene, which indicated that the police officer was to respond with lights and sirens; it was irrelevant that the police officer did not learn that the call involved a fatality until many hours later); Costello v. City of Ellisville, 921 S.W.2d 134, 137 (Mo. App. E.D. 1996) (noting that, because the circumstances led the officer to believe a burglary was in progress and that another officer's safety was at stake, the officer was entitled to respond to the situation as an emergency, even if hindsight demonstrated that an actual emergency did not exist).[10]
Here, the record is clear that the ambulance operators had no reason to suspect anything other than an emergency existed when they received the initial emergency call. Rayman does not dispute that the ambulance operators received a call from dispatch, were instructed that it was an emergency, and obtained information that a patient suffered from uncontrolled bleeding. These facts demonstrate the responder's need to engage its sirens and lights in order to provide effective emergency medical care. We will not encumber emergency-responders with thoroughly investigating the character and extent of a potential emergency-unless they have reason to believe it is not an emergency-before the privileges associated with operating an authorized emergency-vehicle attach to the ambulance operators. Nor will we second-guess the responder's interpretation of the situation, substituting our twenty-twenty hindsight for the circumstances as it then appeared to him or her in that heightened situation. See Costello, 921 S.W.2d at 137. The undisputed facts in the record show that Abbott was responding to an emergency and was authorized by Section 304.022 to engage its sirens and lights as it approached the intersection.
Rayman also posits that there is a factual dispute as to whether Abbott had activated the ambulance sirens and lights before the collision. In its summary-judgment motion, Abbott asserted as an uncontradicted statement of material fact that the ambulance's sirens and lights *23 were activated prior to the collision. Abbott cited Downey's testimony, claiming that Downey noticed the ambulance with its sirens blaring and lights flashing as she neared the intersection. Gans, a disinterested third party, corroborated Downey's testimony, explaining that she viewed the ambulance, with its sirens and lights operating, approach Downey's van before the collision.
In an attempt to controvert this fact, Rayman offered her personal sworn affidavit that the ambulance's sirens and lights were not audible or visible to her as she approached the intersection. However, as Rayman is aware, the trial court struck Rayman's affidavit from the record. Notably, Rayman does not challenge this ruling on appeal. Further, throughout her deposition, Rayman adamantly contended that she did not recall whether the sirens and lights were activated on the ambulance. As a result, the only evidence before the trial court was testimony that the ambulance's sirens and lights were engaged and operating. There simply exists in the record no genuine issue of material fact contesting whether the ambulance's sirens and lights were activated before the ambulance approached the intersection. See Creighton, 937 S.W.2d at 250-51 (finding that the plaintiff did not create a factual issue when eyewitnesses' testimony and affidavits alleged that the police car's sirens and lights were operating at the time of the collision and the plaintiff testified that, although she did not hear a siren, the noise from her radio and windshield wipers may have prevented her from hearing the sirens).
The record contains no material factual disputes precluding the entry of summary judgment. The undisputed material facts demonstrate that Abbott is entitled to judgment as a matter of law. Because Abbott was not the proximate cause of Rayman's injuries, Rayman cannot establish an essential element to her negligence claim and her cause of action must fail. The entirety of Rayman's point on appeal is denied.
Conclusion
The judgment of the trial court is affirmed.
Robert G. Dowd, Jr., P.J., concurs.
Sherri B. Sullivan, J., concurs.

In her response to Abbott's Statement of Uncontroverted Material Facts, Rayman contested this fact, which was derived from her own deposition testimony. In denying the fact, Rayman cited her affidavit, which claimed that the ambulance's sirens and lights were not activated. However, the trial court struck the affidavit from the record, and Rayman does not challenge this ruling on appeal. Rule 74.04(c)(2) requires the non-movant to support each denial "with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Non-compliance with Rule 74.04(c)(2) causes "all factual assertions properly alleged and supported by the moving party to be considered as true." Jordan v. Peet, 409 S.W.3d 553, 558 (Mo. App. W.D. 2013) (quoting State v. Spilton, 315 S.W.3d 350, 356 (Mo. banc 2010) ). By not providing and referencing specific evidence disputing that the ambulance's sirens and lights were activated before the collision, Rayman fails to properly deny this factual allegation for the summary judgment motion, and we deem it admitted. See id. We will further address this issue in the discussion section infra.

Rayman's spouse filed a loss-of-consortium claim, which was dismissed before the trial court entered summary judgment.

All statutory references are to RSMo (Cum. Supp. 2011).

We can consider the limited portions of these depositions that the parties attached to, and referenced in, their respective statements of uncontroverted material facts and properly included in both the summary-judgment record and the legal file on appeal.

By way of example, we struck Rayman's impermissible references to materials outside the summary-judgment record and legal conclusions from her challenge in Part Three. After surveying the remnants, we find that Part Three solely consists of a quotation to Section 304.022.1 and a claim that the ambulance forced Downey into the intersection. Because of the incomplete nature of Part Three, we are unable to provide effective review as to the purported propriety of Downey's response to Abbott's ambulance.

For example, within Part One, Rayman alleged that Abbott's employees did not follow Abbott's internal policies and procedures in operating the sirens and lights at the intersection. However, the evidence Rayman cites in support of this position largely was not a part of the summary-judgment record.

After remand, the plaintiffs amended their petition to include additional factual allegations regarding the pursued vehicle. Oberkramer v. City of Ellisville, 706 S.W.2d 440, 441 (Mo. banc 1986). The trial court again dismissed the petition for failure to state a claim, and the cause was transferred to the Supreme Court. Id. at 440. The Supreme Court affirmed the dismissal, finding that the plaintiffs failed to make a submissible claim as a matter of law. Id. at 442-43. The Supreme Court commented that "[t]he proximate cause of the accident was not the manner in which [the police officer] drove his police vehicle but rather the manner in which the pursued traffic violator drove his vehicle."Id. at 442. Rayman does not address this subsequent case history in her brief.

Recent cases have also addressed the issue of proximate cause when a pursued vehicle strikes and injures the claimant during a vehicular police pursuit. In Stanley v. City of Independence, the Supreme Court found that a police officer's purported negligence was not the proximate cause of the decedents' injuries when the pursued vehicle fled, sped through red lights, operated in the wrong lane of traffic, and struck the decedents' vehicle. 995 S.W.2d 485, 488 (Mo. banc 1999). In the context of injuries caused by pursued vehicles in police chases, appellate courts have interpreted and applied Stanley differently. Compare Throneberry v. Mo. State Highway Patrol, 526 S.W.3d 198, 215 (Mo. App. W.D. 2017) (finding no proximate cause as a matter of law); Frazier v. City of Kan. City, 467 S.W.3d 327, 337-38 (Mo. App. W.D. 2015) (same); Dilley v. Valentine, 401 S.W.3d 544, 549 (Mo. App. W.D. 2013) (same); with Moody v. Kan. City Bd. of Police Comm'rs, 2017 WL 5318271, at *3, *5, 2017 Mo. App. LEXIS 1160, at *7, 15 (Mo. App. W.D. Nov. 14, 2017) (finding the proximate-cause issue was a matter for the jury); Moyer v. St. Francois Cty. Sheriff Dep't, 449 S.W.3d 415, 418 (Mo. App. E.D. 2014) (finding Stanley limited to its facts).

We do not speculate on other scenarios where the operation of an ambulance might constitute the proximate cause of injuries sustained by a plaintiff in a collision with a third-party vehicle. See Nail, 436 S.W.3d at 563 (explaining that the proximate-cause issue must be approached on a case-to-case basis).

Creighton and Costello were overruled in part on other grounds by Davis v. Lambert-St. Louis Int'l Airport, 193 S.W.3d 760, 764 n.3 (Mo. banc 2006).