William HARGIS and Mary Hargis,
Plaintiffs–Respondents,

v.

Randall LANKFORD, Defendant/Third–
Party Plaintiff–Respondent,

and

Darrel Routledge, Defendant/Third–
Party Defendant–Appellant.

No. SD 31215.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 2012.

Motion for Rehearing and Transfer
Denied May 21, 2012.

Application for Transfer
Denied Aug. 14, 2012.

Nikki E. Cannezzaro, for Appellant.

Edward J. Hershewe, Michelle Boehm O'Neal, Katrina R. Richards, for Respondents, Hargis.

Ed Dougherty, for Respondent, Lankford.

NANCY STEFFEN RAHMEYER, Judge.

Darrel Routledge ("Appellant") caused a collision to occur on Highway 60 when he attempted a left turn in front of a vehicle driven by John Hoffman. A second accident [1] occurred within minutes when Lankford and Hargis [2] collided. The jury found Appellant eighty percent at fault and Lankford twenty percent at fault. Appellant brings two points on appeal entwined in the same legal theory: that the negligence of Lankford was, as a matter of law, the intervening cause of the second accident. In the first point, Appellant claims the trial court should have granted a judgment notwithstanding the verdict and in the second point that the court should have

---

1. There was also a third accident that is not the subject of this suit.

2. For ease of clarity we refer to the respondents by their surnames. No disrespect is intended.

granted a new trial. We disagree and affirm the judgment.

■ "The standard of review of denial of a [judgment notwithstanding the verdict] is essentially the same as for review of denial of a motion for directed verdict. A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007). "In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the result reached by the jury[.]" *Giddens v. Kansas City Southern Railway Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000). We will reverse the jury's verdict for insufficient evidence only when there is a complete absence of probative fact supporting the jury's conclusion. *Id.*

The standard of review for an order denying a motion for new trial is abuse of discretion. *Bowan ex rel. Bowan v. Express Med. Transporters, Inc.*, 135 S.W.3d 452, 456 (Mo.App. E.D.2004). When a trial court rules in a way that is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration, it has abused its discretion. *Id.* at 456, 460. The denial of a new trial is an abuse of discretion when it is based on findings not substantially supported by the record. *Id.* at 456. "If a trial court refuses to grant a new trial on the ground that the verdict is against the weight of the evidence, appellate courts will not pass on the weight of the evidence." *Veach v. Chicago and North Western Transp. Co.*, 719 S.W.2d 767, 769 (Mo. banc 1986).

Appellant cites all of the facts in the light most favorable to his position. Appellant claims:

U.S. Highway 60 is a two-lane highway with shoulders on both sides of the road. The "shoulders" of the roadway near the accident site are very wide. According to Officer Clinton Mason of the Missouri Highway Patrol, the shoulders are plenty wide to pull a car off on the shoulder. This area of the highway is as straight and flat as a road can be.

. . . .

At the time of the collision, Ms. Mendenhall, with her daughter as a passenger, was traveling westbound on U.S. Highway 60, following the Hoffman vehicle by three to five car-lengths. When the collision occurred, Ms. Mendenhall slowed her vehicle and traveled through the area of the roadway where the collision had just taken place and pulled off on the shoulder in front of the Hoffman vehicle. Once safely out of the way of passing traffic, Ms. Mendenhall then exited her vehicle and walked back to the Hoffman vehicle to check on the occupants and provide assistance, if needed.

. . . .

Ms. Mendenhall observed the second accident take place. . . . Ms. Mendenhall believes that there was debris in the form of a truck axle in [the] roadway which Mr. Lan[k]ford's vehicle hit. In her statement after the accident, Ms. Mendenhall did not say anything about the axle. Ms. Mendenhall additionally did not have any problem in traveling through the accident scene after the accident where she claims the axle came to rest.

Marie Hoffman is the cousin of defendant Randall Lankford. Ms. Hoffman was a passenger in the Hoffman vehicle which was involved in the first accident. . . . Ms. Hoffman does not believe there was any reason for Mr. Lankford's vehicle to go left of the center line.

Additionally, at some point during this time and prior to the second accident, Ms. Hoffman's church friends, Carolyn and Richard Barnes, arrived at the scene of the accident. The Barnes' were also coming from the East heading West on U.S. 60. They were able to drive through the area where the collision occurred past the Routledge, Hoffman and Mendenhall vehicles, ultimately parking on the right-hand (north) side of the road in front of the Mendenhall vehicle.

Around the time of the accident between the Hoffman vehicle and the Routledge vehicle, Julia Bishop was returning to her home which is right near the area where the accident occurred.... Having observed that these vehicles had been in an accident, Ms. Bishop traveled partially through the accident scene and pulled over to the eastbound shoulder on the south side of Highway 60 to check on the occupants of the Hoffman vehicle.

. . . .

After [another witness] got through the area where the accident occurred, he continued to watch the accident scene in his rearview mirror. [He] observed Mr. Lankford's truck traveling behind him as it approached the area of the accident. Through his rearview mirror, he saw Mr. Lankford's truck move over into the eastbound lane and collide head on with the Hargis vehicle traveling in [the] middle of the eastbound lane.

. . . .

Once [Mr. Lankford] realized he was coming upon the scene of an accident, he let his foot off the accelerator. Mr. Lankford did not apply his brakes. As he let off the gas, Mr. Lankford gradually scooted over to the left. It was not his intention to cross over into the eastbound lane. Mr. Lankford testified he did not cross the centerline. He claims

that he scooted to the left to avoid running over any debris and avoid hitting someone if they got out of one of the vehicles.

Additional facts, in the light most favorable to the verdict, shed light on the issue, including: The accidents occurred within a few minutes, at the most, of each other and at dusk. Appellant described the second accident as "pretty instantly." Ms. Mendenhall testified that the entire incident occurred in approximately five minutes, from the beginning of the first collision to the third collision. The patrolman who responded to the accident scene, Corporal Cornett, testified that the second accident happened approximately one minute after the first. Ms. Mendenhall testified the road was pretty well covered with debris; she was able to make it through the debris because she actually witnessed the collision and she had to slow down and pull to the "very far right" and then go "between the red car and some debris." A fair amount of the debris in the road was from Appellant's vehicle. Ms. Mendenhall further testified "there was quite a bit of debris in the road," including a bumper, an axle, and parts of either fiberglass or plastic. The debris was located towards "the center of the road," more in the westbound lane, toward the center. She did not think there was any way a driver could avoid the axle that obstructed the road if the driver were to continue straight and not pull to the side. She was driving a Yukon XL, which sits quite high above the ground. She had her daughter put her head out the window to watch the clearance on the side of the car so she could avoid the debris. She missed the Hoffman vehicle by mere inches and believed her vehicle may have grazed the same detached axle that Lankford hit. In other words, the first collision, which Appellant undisputedly caused, left debris on the roadway of the rear axle,

carrier bearing, and drive shaft from Appellant's vehicle.

Ms. Mendenhall also had a clear view of the collision between Lankford and Hargis and stated both vehicles were towards the center of the road, but she did not "think the Lankford vehicle was in the center until it, to [her], seemed to hit debris. The car made a jolting motion which pushed it into the center." She believed the debris caused the second accident. She was not sure either car crossed over the center line, but both vehicles were towards the center. She testified "[t]here [were] a few other car accidents before [the witnesses and bystanders] realized [they] needed to clear the road." They did not get the larger debris cleared until after the Lankford/Hargis accident, and there was still smaller debris and glass in the roadway after the police officers arrived.

The tow truck driver, Mr. Macy, testified that the rear end of Appellant's truck was "pretty close to probably the white line." Trooper Mason testified that if a door was open on the Hoffman vehicle, it could extend three or four feet into the lane of U.S. 60. Hargis testified, "When there's a car on the shoulder, you always have a fear that somebody might get out and open a door, so I was careful of that." The primary job of the Highway Patrol is to open the roadway and to keep other accidents from happening at an accident site. It is a common phenomenon for people near the scene to stop and render assistance, and typically park in different spots about the accident site. It is also a known phenomenon that debris drifts in the direction that vehicles are traveling after an impact and as a result of a collision. Here, debris was spread throughout the roadway, much of it drifting to the west of the intersection where the first accident occurred. Ordinary people expect debris to be created by accidents.

The accident site was of a nature that the troopers had "shut the road down" as part of their duty.

There were no lights or flashers at the accident scene at the time of the second accident. Corporal Cornett testified that if he had not seen the flashing lights as he approached the site of the accident, and that if he had not known what he was headed to, that it could have been difficult to see the accident site. The accident reconstructionist concluded that, "If Mr. Lankford is going down a straight, flat, dry road like 60 Highway was on December 17, 2006, from the time that he perceives-from the time that he sees a danger, recognizes what it is, gets his foot on the brake and gets it to a stop, he's going to travel 229 feet."

Lankford did not immediately recognize that it was a wreck that happened in front of him, he saw something in the road, and he believed the object was the rear end of Appellant's truck. From the moment he saw the debris to the impact with the Hargis vehicle, Lankford guessed it was only three to five seconds and testified that it seemed "almost instantly" and "didn't seem like it was any time at all." He let off the gas and "scoot[ed]" to the left. When he was moving to the left it was "[t]o avoid the debris, and, [people] in case somebody did get out of a car." He was trying to watch what was going on to the right of his vehicle where he saw the first car and did not notice the Hargis vehicle until just before they collided. Lankford was trying to avoid hitting people, cars, and debris. Hargis testified that it was dark and, even with his headlights on, he could not see the people who he would later learn were parked by the side of the road. Hargis said the accident happened so fast that there was no way that any human could have reacted to avoid the crash.

Appellant's argument rests on the proposition that Lankford's negligence in failing to drive on the right side of the road and failing to keep a careful lookout was the proximate cause of the accident between Lankford and Hargis. In other words, he claims as a matter of law that Lankford's negligence was an independent and superseding cause of the claimed injuries.

 "Actionable negligence requires a causal connection between the conduct of the defendant and the resulting injury to the plaintiff." *Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 18 (Mo.App. E.D.2005). "[T]he mere fact that injury follows negligence does not necessarily create liability; a plaintiff must show the negligence was the proximate cause of the injury." *Id.* If the cause operates to produce a particular consequence without the intervention of an independent or superseding cause then proximate cause exists. *Id.* "An efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury, but it may not consist of merely an act of concurring or contributing negligence." *Buck v. Union Electric Company*, 887 S.W.2d 430, 434 (Mo.App. E.D. 1994). "If the purported intervening cause occurs in combination or concurrent with earlier negligence, it is not an intervening cause." *Collins v. Missouri Bar Plan*, 157 S.W.3d 726, 732 (Mo.App. W.D.2005).

The practical test of proximate cause is generally considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural and probable consequence. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission by the defendant. The negligence of the defendant need not be the sole cause of the injury, as long as it is one of the efficient causes thereof, without which injury would not have resulted.

*United Missouri Bank, N.A. v. City of Grandview*, 105 S.W.3d 890, 896 (Mo.App. W.D.2003) (internal quotations and citations omitted). The determination of whether proximate cause exists is usually a question left for the jury, however, a court may decide the issue of proximate cause as a matter of law if the evidence reveals the existence of an intervening cause which eclipses the role of the original actor's negligence in the plaintiffs injury. *Buchholz v. Mosby–Year Book, Inc.*, 969 S.W.2d 860, 862 (Mo.App. E.D.1998).

In *Metzger v. Schermesser*, 687 S.W.2d 671 (Mo.App. E.D.1985), the court reversed a decision by the trial court to sustain the defendants' motions for directed verdict holding "in this era of comparative negligence and apportionment of relative fault, the respective degree of contribution of the negligence of multiple tortfeasors is generally [a] jury question." *Id.* at 671, 674. There, two vehicles collided in a dimly lit intersection during a heavy rainstorm and the plaintiff stopped to assist the drivers involved in the wreck. *Id.* at 672. Knowing that oncoming drivers would have limited visibility due to the darkness and the storm, the plaintiff got into one of the vehicles still in the intersection in an attempt to turn on its flashers but, before he could do so, another vehicle entered the intersection and struck the immobile vehicle causing injury to the plaintiff inside. *Id.* The defendants argued that their negligence was not a proximate cause of plaintiff's injury and contended that plaintiff's injuries were caused by the intervening negligence of the third driver entering the in-

tersection and whatever negligence they may have been guilty of was antecedent and remote. *Id.* at 673. The court held the negligence causing the first collision was also a proximate cause of the second collision involving plaintiff because it presented a continuing hazard due to the darkness, weather conditions, and obstruction of the lanes of traffic. *Id.* Thus, any negligence by the driver in the second collision "did not constitute a break in the continuous sequence or an interruption of the chain of events, but was rather conduct which resulted in harm only by reason of its combination and concurrence with the earlier negligence." *Id.*

Similarly, in *Boggs*, the defendant company, ADM, appealed a jury verdict against it for negligence after a child was struck by a tractor-trailer truck trying to enter its facility claiming that the trial court erred in denying ADM's motions for directed verdict and judgment notwithstanding the verdict. *Boggs*, 164 S.W.3d at 13–14. Two tractor-trailer trucks, which were waiting to enter the ADM facility located at the end of the plaintiff's street, were stopped in front of the adolescent plaintiff's home partially blocking the mouth of his driveway from view of oncoming traffic. *Id.* at 13. After exiting his driveway on his bicycle to deliver newspapers, the plaintiff was struck by a third tractor-trailer truck that was driving past the stopped vehicles in the wrong lane of traffic. *Id.* The ADM facility had only one entrance to the plant, had closed off a parking lot which would have made parking available for the tracks so that they would not have been stopped on the residential street, was aware of the local residents' complaints about the tracks stopping on the street, had instructed the drivers to still park on the street, had instructed certain "first-priority trackers" to pass the stopped tracks by traveling down the wrong side of the street, and controlled traffic to its facility with a manually-operated signal light. *Id.* at 11–13, 19. ADM argued that the action of the tracks, which were independently owned and operated, parking in front of the plaintiff's home constituted an intervening, superseding cause which severed ADM's liability. *Id.* at 19. The court rejected this argument, stating:

> The truck drivers' actions of blocking the plaintiff's driveway did not interrupt the chain of events set in motion by ADM, but rather, instead, contributed to the events leading to the plaintiff's injuries. And thus, accordingly, the truck drivers' actions did not constitute an intervening cause so as to sever the causation between ADM's conduct and the plaintiff's injury.

*Id.*

We also find *Schaffer v. Bess*, 822 S.W.2d 871 (Mo.App. E.D.1991), to be instructive:

> When a person negligently makes a left-hand turn onto a busy highway and thereby causes a car to strike him, it is probable that multiple collisions will follow. It is particularly probable that other automobiles will collide with vehicles involved in the initial accident.
>
> . . . .
>
> Clearly, [the] negligent act [of the driver who made a left-hand turn onto the busy highway] was not the sole cause of [the injury in the second accident]. Rather, it was one of the efficient causes thereof . . . without which [the second injury] would not have occurred. Since a party is liable if his negligence, combined with the negligence of others, results in injury, [the first driver] . . . is liable.

*Id.* at 877.

■ Appellant fails in his argument that, "[Appellant's] negligence and the

damages resulting therefrom were completed once all vehicles involved in the first accident came to rest." Appellant's claim that, because the vehicles were off the road, Lankford's negligence in the second accident constitutes extraordinary negligence, relieving Appellant from any liability for plaintiffs' damages, ignores important testimony.

Even though the cars were barely off the highway, there was debris on the highway. The debris included an axle, which one witness claims Lankford hit as he edged toward the center. Appellant's truck stopped very near the fog line. Had anyone opened a door on that vehicle, Lankford would have hit the door. Lankford reacted as the trooper testified most people do when they come upon an accident, watchful for debris and people getting out of automobiles. The accident occurred at dusk. Even the patrolman admitted he would have had trouble seeing the vehicles had there been no flashers or lights on. There were no flashers and lights at the time of the second accident. There was testimony ranging from "pretty instantly" to a "few minutes" in the amount of time that passed between the first and second accidents. The fact that a person who saw the first accident was able to maneuver very carefully on the right side of the road to avoid the debris does not mean that Appellant did not create a hazard when he hit the Hoffman car and scattered debris across the highway. The accident reconstruction expert testified that Lankford would have traveled 229 feet after he recognized that an accident occurred and attempted to slow down.

■ Viewed in the light most favorable to Lankford, "there was substantial and probative evidence demonstrating that Appellant proximately caused the collision between Lankford and the Hargises. Under the reasoning set forth in *Metzger*, *Boggs*, and *Bess*, it is clear that the negligence of Appellant was certainly one of the efficient causes of the accident without which injury would not have resulted. Lankford's actions were a foreseeable, natural product of the original negligence. The injuries from the second accident were put in place by Appellant, which "'set[ ] in motion the chain of circumstances leading to [Hargis's] injuries.'" *Boggs*, 164 S.W.3d at 18 (quoting *Buchholz*, 969 S.W.2d at 861). The time of day of the accident, the closeness in time of the two accidents, the debris on the highway, and the eyewitness testimony that Lankford, in fact, may have hit the debris causing him to move into the other lane of traffic, all contributed to the second accident. Lankford's negligence was directly dependent on and related to the negligence on the part of Appellant. Lankford's negligence was not an independent, intervening cause of the injuries incurred in the second accident. The comparative fault of the drivers, Appellant and Lankford, was properly submitted to the jury for consideration. There was substantial evidence to support the verdict. As previously noted, "in this era of comparative negligence and apportionment of relative fault, the respective degree of contribution of the negligence of multiple tortfeasors is generally [a] jury question." *Metzger*, 687 S.W.2d at 674. Both points are denied.

The judgment is affirmed.[3]

BURRELL, P.J., and LYNCH, J., concur.

---

**3.** Early in the appeal process, this Court raised the issue of whether the underlying

judgment in this case was final and the issue was subsequently taken with the case; however, the issue was withdrawn by the parties and has been resolved.