

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| DOUGLAS SAVAGE, ET AL., | ) | No. ED107521 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| vs. | ) | |
| | ) | Honorable Victor Melenbrink |
| PETER DITTRICH, | ) | Cause No. 16JE-CC00325 |
| | ) | |
| Appellant. | ) | FILED: November 5, 2019 |

Peter Dittrich ("Appellant") appeals from the order and judgment of the Circuit Court of Jefferson County, granting Douglas Savage ("Savage") and Waste Management's ("WM") (collectively, "Respondents") motion for summary judgment on Appellant's counterclaim for personal injury. Savage originally brought this action, claiming he suffered personal injury resulting from a car accident between him and Appellant. Appellant filed a counterclaim for personal injury arising from the same accident, subsequently joining WM. Savage ultimately resolved his personal injury suit against Appellant, leaving only Appellant's counterclaim to be resolved. Respondents filed a motion for summary judgment, which the circuit court granted on December 11, 2018, after concluding Appellant would be unable to prove the element of proximate causation as a matter of law. We reverse and remand.

### I. Background

The facts underlying this case date back to February 4, 2015, when Appellant and Savage were involved in a motor vehicle accident. At the time of the accident, Savage was employed by

WM, and was driving his WM refuse truck eastbound on Missouri Highway 30 ("Highway 30"). Appellant was driving his Jeep Liberty, also eastbound on Highway 30, taking his grandson to pre-school. Both drivers were in the right lane. While both parties headed eastbound on Highway 30, they went from a no-passing zone to a passing zone. After entering this passing zone Appellant moved to pass Savage via the left lane. As Appellant was passing Savage, Savage turned left onto Medley Drive and collided with Appellant's vehicle.

In May 2016, Savage initiated this case by filing a petition for personal injury that he allegedly suffered as a result of this accident. In April 2017, Appellant filed his counterclaim for personal injury against Savage, joining WM as a defendant. In his counterclaim, Appellant alleged that as a result of the accident, his "head, neck, left shoulder, low back, and left knee and all of the bones, joints, muscles, tendons . . . nerves, [and] vessels thereof were caused to be severely bruised . . . lacerated, sprained . . . herniated . . . and rendered swollen and inflamed." Appellant also alleged that as a result of these injuries he was forced to "undergo certain reasonable and necessary hospital and medical care and treatment . . . ." Further, Appellant alleged the accident was caused by Savage's "negligence and carelessness," because:

> (a) Savage operated his motor vehicle at a rate of speed that was . . . excessive and dangerous under the circumstances;
>
> (b) Savage failed . . . to keep . . . a constant . . . lookout ahead and laterally so as to see . . . other vehicles at and near the aforesaid location;
>
> (c) Savage failed . . . to stop his motor vehicle . . . change the course thereof, swerve the same aside, or sound a warning of his approach . . . when, in the exercise of the highest degree of care, he could and should have done so and thus . . . have avoided the [collision] and [Appellant's resulting injuries];
>
> (d) Savage . . . negligently and carelessly [caused] his motor vehicle to overtake, strike, and collide against the passenger side of [Appellant's vehicle]; and
>
> (e) Savage . . . [failed] to signal his intent to make a left turn across [Highway 30] and onto a private driveway.

2

As damages, Appellant requested a judgment "in such sum as may be fair and reasonable in the premises, but in excess of [$25,000], together with prejudgment interest and costs in this behalf expended."

On January 3, 2018, Respondents filed a joint motion for leave to file amended answers, which the court granted. Those answers contained multiple affirmative defenses, but two are most pertinent to this appeal. First, Respondents alleged that Appellant was not entitled to recover "due to his . . . comparative fault," or that "any recovery should be reduced in proportion to [Appellant's] own relative degree of fault." Second, Respondents alleged Appellant was negligent per se for improperly passing and changing lanes, in violation of Section 304.016.4(2) RSMo; for improperly passing a vehicle, in violation of Jefferson County Traffic Code Regulation Section 315.080(B)(3); and for improperly driving on the left side of the road, in violation of Jefferson County Traffic Code Regulation Section 315.080(E)(2).

On August 13, 2018, Respondents filed a motion for summary judgment. In the memorandum in support of summary judgment, Respondents asserted that Appellant could not prove an act or omission by Savage proximately caused his alleged injuries because "any alleged negligence . . . was not a proximate cause of [Appellant's] injuries. Rather, [Appellant's] intervening negligent act in directly violating the traffic law and regulations . . . was the intervening and superseding cause of [Appellant's] injuries," and that broke the "causal connection between . . . any . . . alleged negligence on the part of Savage." Respondents filed a statement of uncontroverted material facts in support of their motion, pointing principally to the facts that the collision occurred near the intersection with Medley drive, that the collision occurred after Appellant entered the left lane and attempted to pass Savage, and that Appellant operated his vehicle in the left lane within 100 feet of the intersection of Highway 30 and Medley Drive.

Appellant filed his response to Respondents' motion for summary judgment on September 9, 2018. In this response, Appellant argued first that Respondents' motion failed to properly and sufficiently set forth uncontroverted facts to allow the trial court to conclude his "violation of traffic laws and regulations" was the direct, proximate, and immediate cause of the accident. Next, Appellant asserted that there were multiple negligent acts or omissions by Savage that caused or contributed to this accident, and his resulting injuries, including "[violating] a Missouri statute, Jefferson County traffic regulations, and his employer's safety rules" by failing to activate his left turn signal at least 100 feet before turning onto Medley Drive. Third, Appellant argued that where there is evidence that the conduct of both parties contributed to cause damage, as he alleged in this case, the fact finder should be allowed to compare each party's respective fault. Finally, Appellant argued Section 304.016.4(2) does not apply to this case because his view was not obstructed.

On December 11, 2018, the trial court granted Respondents' motion for summary judgment, finding Appellant could not prove the element of proximate cause as a matter of law.

This appeal follows.

## II. Discussion

Appellant raises one point on appeal, alleging the trial court erred in granting Respondents' motion for summary judgment. Appellant argues Savage's conduct set in motion the chain of circumstances leading to his injuries, in that Savage's failure to keep a careful lookout and properly signal his intent to turn left contributed to the collision between his refuse truck and Appellant's Jeep Liberty.

A. Standard of Review

The propriety of summary judgment is purely an issue of law, and as such our review is essentially de novo. Altidor v. Broadfield, 576 S.W.3d 272, 278 (Mo. App. E.D. 2019). The

standards we employ to determine if summary judgment was proper are no different than those employed by the trial court: moving parties must show there is no genuine dispute of material fact, and based on those facts they are entitled to judgment as a matter of law. Id.; Mo. Sup. Ct. R. 74.04(c). When considering appeals from summary judgments, this Court reviews the record in the light most favorable to the party against whom judgment was entered, and we accord the non-moving party the benefit of all reasonable inferences from the record. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993).

B. Analysis

In a negligence action, the plaintiff must demonstrate (1) the defendant had a duty to protect the plaintiff from injury; (2) the defendant breached that duty; and (3) the defendant's breach was the cause-in-fact and proximate cause of the plaintiff's injury. Spencer v. Am. Airlines, Inc., 553 S.W.3d 861, 866 (Mo. App. E.D. 2018). Actionable negligence requires a "causal connection" between the defendant's conduct and the plaintiff's injury. Hargis v. Lankford, 372 S.W.3d 82, 87 (Mo. App. S.D. 2012). It is not enough that an injury merely follows negligence, as the plaintiff must show the negligence is the proximate cause of the injury. Id.

Regarding proximate cause, the plaintiff must show the negligence charged was the "efficient cause that set in motion the chain of events leading up to the injury." Higgenbotham v. Pit Stop Bar and Grill, LLC, 548 S.W.3d 323, 331 (Mo. App. E.D. 2018). The defendant's negligence is the proximate cause of an injury "if, after its occurrence, it appears to be the reasonable and probable consequence of the defendant's act or omission," or if that cause produces "a particular consequence without the intervention of an independent or superseding cause." Id.; see also Lankford, 372 S.W.3d at 87. Further, an efficient intervening cause is a

5

"new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury," but it may not consist of a mere act of concurring or contributing negligence. Lankford, 372 S.W.3d at 87.

### Savage's Actions Contributed to the Accident

Appellant first argues the trial court erred in granting summary judgment against him because there is a genuine issue of material fact as to whether Savage's actions contributed to the collision. Appellant alleges the trial court ignored the instructions provided by the Missouri Supreme Court regarding submission of this type of dispute to the jury for a determination of fault, and that there was sufficient evidence suggesting, at the very least, that Savage and Appellant's conduct "combined and contributed to cause those harms experienced by [Appellant]." Appellant points to two reasons why Savage's conduct contributed to cause the collision: first that Savage failed to keep a careful lookout, and second that Savage failed to properly signal his intent to turn left onto Medley Drive. Submissions that a driver failed to keep a careful lookout or failed to properly signal can serve as proper bases for recovery in a negligence action. MAI 17.05-17.06 (2012); Jenkins v. Wabash R. Co., 322 S.W.2d 788, 798 (Mo. 1959) ("In a primary negligence case it should be sufficient if a jury is authorized to find that a defendant was negligent specifically in failing to keep a proper lookout, and that such negligence directly caused the plaintiff's injuries.").

In Missouri, drivers have a duty to keep a vigilant lookout. Countryman v. Seymour R-II Sch. Dist., 823 S.W.2d 515, 517 (Mo. App. S.D. 1992). The essence of the "failure to keep a careful lookout" claim is a failure to see and a failure to act. Hayes v. Price, 313 S.W.3d 645, 650 (Mo. banc 2010) (citing Lovelace v. Reed, 486 S.W.2d 417, 418-19 (Mo. 1972)). To support a case on the theory of failure to keep a lookout, there must be evidence that the defendant saw or could have seen plaintiff in time to have avoided the collision, and

6

circumstantial evidence may make a submissible case on failure to keep a lookout. Countryman, 823 S.W.2d at 517. An instruction on failure to keep a careful lookout should not be submitted to the jury unless there is "substantial evidence" that the allegedly negligent party kept a careful lookout, and that party could have seen the other vehicle in time to have taken "effective precautionary action." Rouse v. Cuvelier, 363 S.W.3d 406. 412 (Mo. App. W.D. 2012). The inquiry is two-fold, if the driver was keeping a careful lookout, could the driver have seen the danger; and if the driver could have seen the danger, did the driver have the ability to take some precautionary measure such as veering, honking the horn, or slowing down to prevent the accident? Hayes, 313 S.W.3d at 650. Further, a driver is held to have seen what looking would have revealed, and failure to do so is negligence as much as if he had not looked at all. Id.

In Rouse v. Cuvelier, a case with similar facts, the Western District held a jury issue existed as to whether one of the parties to a car accident was negligent in failing to keep a careful lookout. 363 S.W.3d at 413. On August 16, 2007, both parties to the accident were driving northbound on Highway 65. Id. at 410. Cuvelier was driving a Ford F-350, while Rouse was driving a John Deere tractor equipped with a front end loader with a two-prong hay fork attached to the front. Id. Rouse was aware that there was at least one car traveling behind him. Id. at 412. After traveling for roughly a mile, the parties entered a passing zone, and Cuvelier activated his left turn signal and proceeded to pass the three vehicles in front of him, including Rouse's tractor. Id. at 411. Cuvelier passed the first two vehicles without incident, but as he passed Rouse's tractor, Rouse initiated a left turn. Id. Cuvelier realized Rouse was turning left, toward him, and tried to swerve left but was unable to avoid a collision. Id. The hay fork of Rouse's tractor struck the passenger side mirror of Cuvelier's truck, scraped down the side of the truck, and hit Cuvelier's trailer, causing the tractor to turn over on its side. Id. Rouse sued Cuvelier for his injuries, and the trial court submitted a comparative fault instruction to the jury

7

based on Cuvelier's theory that Rouse failed to keep a careful lookout. Id. at 412. On appeal, the Western District held, based on these facts, a jury issue existed as to whether Rouse was negligent in failing to look behind him prior to turning, knowing that there was at least one car behind him. Id. at 413.

Similar to Rouse, here both Savage and Appellant were traveling the same direction on Highway 30. Also, as in Rouse, Savage knew that Appellant was driving behind him and that he was constantly gaining ground on him. Here the parties entered a passing zone and Appellant moved to pass Savage, like in Rouse. Additionally, Savage's refuse truck was equipped with side mirrors on the front of each door enabling him to see objects in the left lane, as well as a camera on the rear streaming onto a screen in the cab of the truck. Savage also admitted that there was nothing interfering with his ability to see Appellant's vehicle, and that he could see the roadway to the side of his refuse truck and the video captured by the rear camera.

While there is no direct evidence that Savage failed to keep a careful lookout, that is not required. See Countryman, 823 S.W.2s at 517 (circumstantial evidence is enough to make a submissible case on failure to keep a lookout). Here, the evidence available at the time Respondents moved for summary judgment showed Savage could see Appellant's vehicle as it traveled behind him, and that he could see objects in the left lane via the mirrors on his vehicle. Further, Appellant testified in his deposition that he was struck by Savage after he was almost past his refuse truck, meaning Savage could have seen him immediately to his left, had he looked, and had he looked he could have avoided striking Appellant's vehicle. See Hayes, 313 S.W.3d at 650 ("the inquiry is two-fold, if the driver was keeping a careful lookout, could the driver have seen the danger; and if the driver could have seen the danger, did the driver have the ability to take some precautionary measure . . . to prevent the accident."). Thus, the evidence showed Savage failed to keep a careful lookout.

In regards to Appellant's argument that Savage also failed to signal before turning left, because Savage failed to keep a careful lookout, whether he also failed to signal does not affect the outcome of this case. Thus, we will not address whether Savage was negligent in failing to signal his intent to turn left onto Medley Drive.

Accordingly, there is a genuine issue of material fact as to whether Savage's actions contributed to cause the collision.

*Genuine Issue As to Whether Appellant was Negligent Per Se*

Respondents argue that even if Savage was negligent, Appellant still cannot prove the element of proximate cause because he was negligent per se in violating Section 304.016.4(2) and Jefferson County Traffic Code Regulations 315.080(B)(3) and (E)(2), and those violations were an independent and intervening cause breaking the chain of causation. According to Respondents, a statutory violation "eclips[es] the role of any alleged negligence of another party." But Appellant argues, and we agree, that there is a genuine issue of material fact as to whether Appellant was negligent per se.

Respondent's argument requires we interpret Section 304.016 and Regulation 315.080. The primary rule of statutory construction is "to determine the legislative intent from the language used in the statute by considering the plain and ordinary meaning of the words used therein." Shipman v. DNS Elec. Materials, Inc., 267 S.W.3d 751, 758 (Mo. App. E.D. 2008). This Court presumes the legislature intended that every word, clause, sentence, and provision of a statute have effect and be given meaning. Id. The use of conjunctions and the placement of commas within a statute are crucial. Columbia Athletics Club v. Dir. of Revenue, 961 S.W.2d 806, 808 (Mo. banc 1998); see also Derousse v. State Farm Mut. Auto. Ins. Co., 298 S.W.3d 891, 895 (Mo. banc 2009) (the legislature's use of a comma to separate words and phrases indicates the presence of a series).

9

Section 304.016 governs the passing of vehicles on the road in Missouri.  The key portion at issue in this case is Section 304.016.4(2), which states in pertinent part:

> 4.  No vehicle shall at any time be driven to the left side of the roadway under the following conditions
>
> . . .
>
> (2) When **the view is obstructed** upon approaching within one hundred feet of any bridge, viaduct, tunnel, or when approaching within one hundred feet of or at any intersection or railroad grade crossing.

Section 304.016.4(2) (emphasis added).  Regulation 315.080 is a Jefferson County Traffic Regulation, and it supports the implementation of Section 304.016.4, stating in pertinent part:

> B.  The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations and exceptions hereinafter stated:
>
> . . .
>
> 3.  No driver of a vehicle shall overtake and pass another vehicle moving in the same direction within an intersection or within [100] feet of an intersection.
>
> . . .
>
> E.  No vehicle shall at any time be driven to the left side of the roadway or highway under the following conditions:
>
> . . .
>
> 2.  **When the view is obstructed** upon approaching within [100] feet of any bridge, viaduct, tunnel or when approaching within [100] feet of or at any intersection or railroad grade crossing.

Jefferson County Traffic Regulation 315.080(B)(3), (E)(2) (emphasis added).

Looking at the construction of Section 304.016.4(2), we note the legislature's use of a comma separating "bridge" and the words that follow.  In doing so, the legislature created a statute that provides a series of categories demanding motorists not move their vehicles to the left of the roadway **when their view is obstructed**.  Columbia Athletics Club, 961 S.W.2d at 808 (the placement of commas within a statute is crucial); see also Derousse, 298 S.W.3d at 895

10

(the legislature's use of a comma to separate words and phrases indicates the presence of a series). Thus, a motorist is not permitted to move his vehicle to the left side of the roadway when his view is obstructed upon approaching within 100 feet of a bridge, upon approaching within 100 feet of a viaduct, and so on. The same reading applies to Regulation 315.080(E)(2), as it also uses the "when the view is obstructed" language. Regulation 315.080(E)(2). And even if it could be argued such an interpretation cannot be applied to Regulation 315.080(B)(3), and Appellant violated that regulation, Respondents point to no case law holding that the violation of a county ordinance may serve as the basis of summary judgment, or that it amounts to a superseding cause of injury and thus prevents a plaintiff from proving causation.

In Appellant's case, it is undisputed that his view of the road was unobstructed when he moved to the left side of the roadway and attempted to pass Savage. Further, it is also undisputed that Appellant did not move to pass until the parties had entered an approved passing zone. Respondents argue that the prohibition of passing on the left side of a roadway when approaching within one hundred feet of an intersection is "absolute and wholly unrelated to whether the intersection was within a passing . . . zone based upon any markings on the roadway." But such an interpretation would result in drivers being unable to depend on the passing zone markings on highways. That cannot be what the legislature intended.

Furthermore, even if it can be argued Appellant violated Section 304.016 and Regulation 315.080, his conduct still would not be an intervening superseding act of negligence breaking the chain of causation. Such an act must be "a new and independent force" that so interrupts the chain of events that it becomes the "responsible, direct, proximate and immediate cause of the injury." Lankford, 372 S.W.3d at 87. Such an act cannot be "merely an act of concurring or contributing negligence." Id. Here, Appellant claims that Savage failed to keep a careful lookout while driving his refuse truck, and thus Appellant's act of passing within 100 feet of an

11

intersection was, at most, an act of concurring or contributing negligence, and thus not an intervening superseding cause of the collision.

Additionally, Respondents rely on inapposite case law to argue a statutory violation eclipses any alleged negligence by Savage. The principle case Respondents cite is Rayman v. Abbot Ambulance, 546 S.W.3d 12 (Mo. App. E.D. 2018), which they argue is directly on point. But Rayman is distinguishable on its facts. In that case, two employees of Abbott were driving their ambulance eastbound on Interstate 44 in St. Louis when they received a call to transport a patient who was experiencing uncontrolled bleeding. Id. at 14. They activated the emergency sirens and lights and exited the highway at South Kingshighway Boulevard. Id. Elizabeth Downey was in her van, stopped at a red light that controlled the highway exit ramp onto South Kingshighway Boulevard, and as the ambulance approached her, she moved into the southbound lane to allow it to proceed. Id. Another driver, Lisa Gans, saw Downey's van enter the intersection, and then observed Rayman's vehicle proceed past her and into the intersection, colliding with Downey's van. Id. The ambulance did not strike, or swerve into the path of any of the vehicles involved. Id. at 21.

Rayman sued Abbot, alleging that its ambulance approached the intersection in a negligent manner and with excessive speed, causing her vehicle to collide with Downey's van. Id. at 15. Abbot responded it was not the proximate cause of Rayman's injuries because Rayman had violated Section 304.022.1, requiring motorists to yield the right of way to emergency vehicles, and such violation was an independent intervening cause of her injuries. Id. The trial court entered judgment in favor of Abbot, finding Rayman would not be able to show the existence of a duty, or that Abbott's conduct was the proximate cause of her injuries. Id.

On appeal, this Court affirmed the trial court, holding that Rayman's conduct of entering the intersection when an ambulance was approaching was an intervening and independent act,

12

and that the ambulance was authorized to engage its sirens and lights because it was responding to an emergency. Id. at 21, 23. However, Appellant's case has far different facts. To begin with, there was no emergency vehicle involved in this case. And unlike Rayman, where the Ambulance did not collide with the plaintiff, here Savage collided with Appellant's vehicle. Thus the causal connection between the parties' conduct was not so attenuated in Appellant's case. Further, the parties in Rayman were not in a passing zone when the collision occurred, while here Appellant had waited to pass until he was in a passing zone. Additionally, Rayman dealt with Section 304.022.1, requiring motorists to yield the right-of-way to emergency vehicles, which is far different from the statute at issue in Appellant's case.[1]

Therefore, there is a genuine issue of material fact as to whether Appellant was negligent per se, and thus the proximate cause of his own injuries.

### Issue of Comparative Fault

Appellant also argues that this was a case involving comparative fault, and as such should have been submitted to a jury for the determination of the parties' fault. Respondents assert there is no issue of comparative fault because Appellant's conduct in passing Savage within 100 feet of an intersection was the proximate cause of this accident. However, we have already explained there are genuine issues of material fact as to whether Savage's conduct contributed to the collision, and whether Appellant was negligent per se. Thus, we will now discuss Appellant's argument that this is a case of comparative fault, and thus should have been submitted to a jury.

---

[1] Similarly, Respondents' reliance on Buck v. Union Electric Co. is also misplaced. 887 S.W.2d 430 (Mo. App. E.D. 1994). There, JoAnn Richards was driving southbound on Three Mile Road when she approached a Union Electric backhoe partially in her lane of traffic. Id. at 432. Richards proceeded to enter the northbound lane of the road to pass the backhoe, but after passing she did not reenter the southbound lane, instead proceeding in the wrong lane toward the hillcrest where she eventually collided with Buck, who was driving northbound. Id. at 432-33. Conversely, here Appellant was in an approved passing zone, the collision did not involve a third-party, and Appellant was not proceeding in the wrong lane of traffic after passing. Savage struck Appellant's vehicle before he could pass completely.

13

The Missouri Supreme Court adopted a comprehensive system of comparative fault, replacing the doctrine of contributory negligence, in Gustafson v. Benda. 661 S.W.2d 11, 16 (Mo. banc 1983). But even under the draconian doctrine of contributory negligence, Missouri courts recognized that the mere act of passing another vehicle at an intersection was not contributory negligence as a matter of law. See Kraft v. Armentrout, 275 S.W.2d 402, 404 (Mo. App. 1955) (where there was no dispute the plaintiff passed the defendant's truck at the intersection, the court held this was not contributory negligence as a matter of law). In replacing the "draconian" rule of contributory negligence with the system of comparative fault, the Missouri Supreme Court intended to "eliminate the inherent inequity in a legal doctrine that irrationally imposed total responsibility upon one party for the consequences and conduct of both parties. Allison v. Scerdrup & Parcel and Assocs., Inc., 738 S.W.2d 440, 451 (Mo. App. E.D. 1987). Missouri has adopted a system of "pure" comparative fault, whereby a plaintiff's negligence that concurs with that of the defendant does not relieve the defendant of liability. Id. "The key to this system is that a jury decides the issues of relative fault and assesses the appropriate percentages." Rodriquez v. Suzuki Motor Corp., 936 S.W.2d 104, 107 (Mo. banc 1996). Thus, where there is evidence the conduct of both parties "combined and contributed to cause damage," the fact finder decides the contributions toward such causation made by each party. Allison, 738 S.W.2d at 451.

Here, there was no dispute Appellant attempted to pass Savage near an intersection. However, Savage's conduct also contributed to cause this accident. We explained above that Appellant claims Savage failed to keep a careful lookout, making a left turn directly into Appellant's vehicle. As such, there is evidence the conduct of both parties combined and contributed to cause damage, and thus this case should have gone to a jury to decide each party's contribution toward such causation. Id.

Therefore, we hold that the trial court erred in finding Appellant could not prove proximate causation as a matter of law. There were genuine issues of material fact as to whether Savage's actions contributed to the collision, and as to whether Appellant was negligent per se. Further, this was a comparative fault case that should have been submitted to a jury for an assessment of each party's respective fault. Thus, Appellant's point is granted, and this case is reversed and remanded to the trial court.

### III. Conclusion

The decision of the trial court is reversed and remanded.

_____
ROY L. RICHTER, Judge

Robert M. Clayton III, P.J., concurs.
Robert G. Dowd, Jr., J., concurs.

15